UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| AMY ARMOGIDA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-01986-JPH-DLP |
| | ) | |
| JOBS WITH JUSTICE, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**ORDER GRANTING IN PART DEFENDANT'S MOTION TO DISMISS AND REMANDING TO MARION COUNTY SUPERIOR COURT**

Amy Armogida alleges that Jobs With Justice, Inc., (JWJ) owes her unpaid wages and payment for other employment-related benefits. Dkt. 33. JWJ has filed a motion to dismiss. Dkt. [86]. For the reasons below, that motion is **GRANTED in part** with respect to Ms. Armogida's claims that are preempted by federal law. Ms. Armogida's remaining state-law claims are **REMANDED** to the Marion County Superior Court.

I.
**Facts and Background**

Because Defendant has moved for dismissal under Rule 12(b)(6), the Court accepts and recites "the well-pleaded facts in the complaint as true." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

Amy Armogida worked as the lead organizer at Central Indiana Jobs with Justice (CIJWJ) under an employment contract between CIJWJ and Communications Workers of America Local 4900 (CWA). Dkt. 33-1. The employment contract, which Ms. Armogida attached as an exhibit to her

1

amended complaint, is titled "Tentative Agreement" and it summarizes proposed "changes to the collective bargaining agreement" between CIJWJ and CWA.  *Id.* at 1.  The Tentative Agreement includes changes specific to Ms. Armogida's employment, as well as changes to employment policies covering all CIJWJ employees.  *Id.* at 2–4.

The proposed changes to Article 24 of the collective bargaining agreement provide that "[a]s of the effective date of this Agreement, the full time annual salary of the Lead Organizer (Amy Armogida) is $50,000."  Dkt. 33-1 at 1, Art. 24 (cleaned up).  And, with respect to Article 22, that "[t]he employer currently provides family coverage to Amy Armogida through the United Furniture Workers health insurance fund and intends to continue to do so while she is employed as Lead Organizer by the Employer, subject to the availability of funds."  *Id.* at Art. 22 (cleaned up).  JWJ is not mentioned in the Tentative Agreement.  *See generally* dkt. 33-1.

Ms. Armogida's employment with CIJWJ ended at some point prior to March 30, 2020.  Dkt. 33 at 2 ¶ 10–15.  On March 30, Mackenzie Baris, Deputy Director of JWJ, sent an email that discussed CIJWJ's delay in paying Ms. Armogida.  Dkt. 33 at 2–3 ¶ 15; dkt. 36-1.[1]  In the email, of which Ms. Armogida was not a recipient, Ms. Baris "offered national JWJ support" to

---

[1] Because Ms. Armogida referred to the March 30, 2020, email in her amended complaint, JWJ may introduce the email in support of its motion to dismiss without converting the motion into a motion for summary judgment.  *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim.").

2

CIJWJ "both in figuring out finances and how to make [Ms. Armogida] whole[.]" Dkt. 36-1 at 2. Ms. Baris then "continued to communicate directly with Plaintiff concerning her unpaid wages, health insurance premiums and taxes that were due" and "continued to assure Plaintiff that the amounts due and owing to her would be paid." Dkt. 33 at 3 ¶ 16.

On April 20, 2020, JWJ entered into a grant agreement with CIJWJ, in which JWJ agreed to provide it with $8,000 because CIJWJ was unable to "make final payments owed for work already performed." Dkt. 33-2 at 1, 2.[2] The grant agreement specifies that the funds "must be spent to make final payments to Amy Armogida for work performed for the coalition." *Id.* at 1. Ms. Armogida never received these funds. Dkt. 33 at 3 ¶ 19.

Ms. Armogida sued JWJ and CIJWJ in state court for violation of Indiana's Wage Claim Statute, breach of contract, promissory estoppel, and conversion. Dkt. 1-1 at 14; dkt. 33. Ms. Armogida alleges that JWJ and CIJWJ were her "joint employers." Dkt. 33 at 1 ¶ 2. She alleges that, "at the time of her separation from the Defendant organizations," Defendants had failed to pay her earned wages, health insurance premiums, or her "incurred self-employment taxes and federal and state income taxes, even though these amounts were withheld from the Defendants." Dkt. 33 at 2 ¶ 10–12.

Defendants removed the case to this Court arguing that Section 301 of the Labor Management Relations Act preempts some of Ms. Armogida's claims.

---

[2] The grant agreement is also attached to Ms. Armogida's amended complaint. *See* dkt. 33-2.

3

28 U.S.C. § 185; dkt. 1 at 1.  CIJWJ was dismissed as a defendant after it and Ms. Armogida filed a Joint Stipulation of Dismissal on February 23, 2021. Dkts. 55, 57.  JWJ then moved to dismiss Ms. Armogida's complaint.  Dkt. 35. The Court denied that motion without prejudice so that the parties could provide additional briefing on several points identified by the Court.  Dkt. 83. JWJ has refiled its motion to dismiss.  Dkt. 86.

## II.
## Applicable Law

Defendants may move under Federal Rule of Civil Procedure 12(b)(6) to dismiss claims for "failure to state a claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6).  To survive a Rule 12(b)(6) motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A facially plausible claim is one that allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

When ruling on a 12(b)(6) motion, the Court will "accept the well-pleaded facts in the complaint as true," but will not defer to "legal conclusions and conclusory allegations merely reciting the elements of the claim."  *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011).

## III.
## Analysis

JWJ argues that Ms. Armogida's state-law wage, breach of contract, and conversion claims are preempted by Section 301 of the LMRA and must be dismissed because JWJ was not her joint employer. Dkt. 87 at 3–10.

### A. Section 301 Preemption

Section 301 of the LMRA confers federal jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization." 29 U.S.C. § 185(a) ("Section 301"). Under the doctrine of complete preemption, Section 301 provides an exception to the well-pleaded complaint rule and "displaces entirely any state cause of action for violation of a collective bargaining agreement." *Boogaard v. National Hockey League*, 891 F.3d 289, 293–94 (7th Cir. 2018).

"Section 301 preempts claims directly founded on or substantially dependent on analysis of a collective-bargaining agreement." *Atchley v. Heritage Cable Vision Assocs.*, 101 F.3d 495, 498 (7th Cir. 1996) (quoting *Caterpillar Inc. v. Williams*, 482 U.S. 386, 394 (1987)). However, "[n]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301." *Loewen Group Intern., Inc. v. Haberichter*, 65 F.3d 1417, 1421 (7th Cir. 1995) (quoting *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985)).

To determine if a state law claim is preempted by Section 301, courts "look to see whether the resolution of the claim depends on the meaning of, or

requires the interpretation of, a collective bargaining agreement." *Id.*  The Seventh Circuit has identified several scenarios where a collective bargaining agreement may be implicated but the claim is not preempted: "(1) when the particular contractual provision is so clear as to preclude all possible dispute over its meaning, (2) if the parties do not dispute the interpretation of the relevant CBA provisions, or (3) where reference to the CBA is only necessary for computing damages."  *Wisconsin Cent., Ltd. v. Shannon*, 539 F.3d 751, 758 (7th Cir. 2008).  "[T]he question of whether a state law is preempted by virtue of a CBA, requires a case-by-case factual analysis to determine the extent to which a state law claim will require interpretation of a CBA."  *Id.* at 760.

Here, JWJ argues that Section 301 of the LMRA (1) preempts Ms. Armogida's breach of contract claim because it is "founded directly on rights created by" the Tentative Agreement, and (2) preempts her claims for conversion and violation of the Indiana Wage Claim Statute because resolution of those claims would require interpretation of the Tentative Agreement's terms.  Dkt. 87 at 6.

### 1. Wage Claim

Ms. Armogida alleges that JWJ violated the Indiana Wage Claim statute (IWCS), Ind. Code § 22-2-9-1, by failing to pay her wages that she had earned by the time of separation.  Dkt. 33 at 2–4 ¶¶ 10, 13, 20–27.  Indiana's Wage Claim statute provides that "the unpaid wages or compensation of [a covered] employee shall become due and payable at regular pay day for pay period in which separation occurred."  Ind. Code. § 22-2-9-2(a).

JWJ argues that the Tentative Agreement would need to be interpreted to determine questions like whether her wages were due in equal or varying installments and what would happen in the event of early separation before the full annual salary had been paid. Dkt. 87 at 7–8. Ms. Armogida responds that even if resolving those questions became necessary, none would require interpretation of the Tentative Agreement. Dkt. 95 at 4–6.

"[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas v. Bradshaw*, 512 U.S. 107, 124 (1994). In the context of a state-law wage claim, the Seventh Circuit has found that, even if explicit terms of the collective bargaining agreement may not provide an answer, "it is a question of federal contract interpretation whether there [is] a contractual obligation under the CBA to provide the payments at a certain time and, if so, whether the employer breached that implied contract provision." *Atchley*, 101 F.3d at 500.

Here, the Tentative Agreement provides that Ms. Armogida is owed $50,000 annually but provides no further information regarding the manner, timing, or increments of pay or whether any additional benefits could be considered part of her "wages". Dkt. 33-1 at 1 (Art. 24). The Court would need to interpret the Tentative Agreement to determine "whether there was an obligation under the CBA to provide the payments at a certain time" and whether JWJ breached that obligation. *Atchley*, 101 F.3d at 500; *see also In re Bentz Metal Prods. Co., Inc.*, 253 F.3d 283, 287 (7th Cir. 2001) (en banc)

7

(recognizing that "[i]f entitlement or the amount due were seriously in dispute, as to these questions interpretation of the CBA would be necessary"). Therefore, the IWCS claim is preempted.

### 2. Breach of Contract

In Count II, Ms. Armogida alleges that JWJ breached two contracts: the Tentative Agreement between CIJWJ and CWA, dkt. 33 at 4 ¶¶ 29–31; dkt. 33-1; and the grant agreement between JWJ and CIJWJ, of which she alleges to be a third-party beneficiary, dkt. 33 at 4 ¶¶ 32–34; dkt. 33-2.

#### a. The Tentative Agreement

Count II alleges that "pursuant to the term of the [Tentative Agreement], Defendants were required to pay wages and health insurance premiums to" her. Dkt. 33 at 4 ¶¶ 30–31. And the Tentative Agreement was between an employer (CIJWJ) and a labor organization (CWA).[3] See dkt. 33-1. Ms. Armogida's claim for breach of the Tentative Agreement is thus a "[s]uit[] for violation of a contract between an employer and a labor organization," so it is preempted by Section 301. *See Boogaard*, 891 F.3d at 294. As a claim that is "directly founded" on the Tentative Agreement, dkt. 33 at ¶¶ 30-31, it is preempted by Section 301. *Atchley*, 101 F.3d at 498. Moreover, the fact that the Tentative Agreement is not a formal CBA but rather an agreement for changes to the CBA does not change the analysis because Section 301 "is not

---

[3] While the contract is not signed or shown to have been incorporated into the CBA, it may still be found to bind the parties, *see Sarauer v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. No. 10*, 966 F.3d 661, 677 (7th Cir. 2020) ("[O]ffer and acceptance, not execution, make a labor contract.").

8

just limited to formal CBAs." *McNealy v. Caterpillar Inc.*, 139 F.3d 1113, 1121 (7th Cir. 1998) (finding that Section 301 extends to implied-in-fact CBAs) (quoting *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods*, 369 U.S. 17, 28 (1962)).  That is, "[a]lthough most § 301 litigation involves alleged violations of CBAs, the Supreme Court has squarely held that '[a] federal forum was provided for actions on other labor contracts besides collective bargaining contracts.'" *Olson v. Bemis Co., Inc.*, 800 F.3d 296, 301 (7th Cir. 2015) (quoting *Retail*, 396 U.S. at 26).

In sum, the claim for breach of the Tentative Agreement is preempted by Section 301.  *See Atchley*, 101 F.3d at 498 (Section 301 preempts and displaces a state-law cause of action "[e]ven if plaintiff makes no mention of § 301 in a complaint . . .").

### b. The Grant Agreement

Count II also alleges that JWJ breached the Grant Agreement with CIJWJ "by having failed to deliver the funds to Plaintiff to pay a portion of her unpaid wages."  Dkt. 33 at 4 ¶ 32, 34.[4]  Count II further alleges that Ms. Armogida is a third-party beneficiary to the Grant Agreement and could, therefore, enforce it.  *Id.* at ¶ 33.

Unlike the Tentative Agreement, neither of the parties to the Grant Agreement are labor organizations.  *See* dkt. 33-2.  And unlike the claim for

---

[4] While the parties' briefing does not discuss these allegations as a separate breach of contract claim, the complaint expressly asserts "Defendants are also in breach of the contract attached to Plaintiff's Complaint as Exhibit 'B.'"  Dkt. 33 at 4 ¶ 32.  Because § 301 is jurisdictional, the Court has an independent obligation to assure itself of jurisdiction over each claim.

breach of the Tentative Agreement, this claim is not based on a collective bargaining agreement. Last, JWJ has not argued, nor does it appear, that any labor contract would need to be interpreted to resolve this claim. Therefore, this claim is not preempted by Section 301. *See Boogaard*, 891 F.3d at 294.

### 3. Promissory Estoppel

Ms. Armogida alleges that JWJ is liable under a theory of promissory estoppel with respect to Ms. Baris's emails. Dkt. 33 at 5 ¶¶ 37–42. This claim does not relate to the Tentative Agreement between CIJWJ and CWA, and JWJ acknowledges that it is not preempted by Section 301. Dkt. 87 at 3 (incorporating arguments raised in dkts. 36 and 46).

### 4. Conversion

Ms. Armogida alleges that JWJ is liable under Indiana Code § 35-43-4-3 for conversion of the wages and health insurance premiums she was owed under the Tentative Agreement. Dkt. 95 at 6. Under Indiana law, conversion is "the knowing or intentional exertion of unauthorized control over the personal property of another." Ind. Code § 35-43-4-3.

As with ICWS claim, JWJ argues that the contract would need to be interpreted to determine whether Ms. Armogida is entitled to payment for the health insurance premiums, so the claim is preempted. Dkt. 87 at 6–7.

For the health insurance benefits, the Tentative Agreement provides,

> The employer currently provides family coverage for Amy Armogida through the United Furniture Workers health insurance fund and intends to continue to do so while she is employed as Lead organizer by the Employer, subject to the availability of funds.

10

Dkt. 33-1 at 1, Art. 22 (cleaned up). Ms. Armogida maintains that this provision is unambiguous and entitles her to payment. Dkt. 95 at 6. JWJ argues that phrases like "intends to continue" and "subject to availability of funds" would need to be interpreted to determine whether Ms. Armogida was truly "entitled" to health insurance premiums, making them her "property" under the conversion statute. Dkt. 87 at 6–7.

"[P]reemption can extend beyond contract disputes to other state law claims if resolution of those claims is sufficiently dependent on an interpretation of a CBA." *In re Bentz*, 253 F.3d at 289. "A state law claim requires the interpretation of a collective bargaining agreement when *an element* of the claim requires a court to interpret any term of a collective bargaining agreement." *See Healy v. Metropolitan Pier and Exposition Authority*, 804 F.3d 836, 841 (7th Cir. 2015) (quotations omitted).

Here, whether the health insurance premiums are Ms. Armogida's property under the conversion statute requires interpreting Article 22 to determine what it means that CIJWJ "intends" to continue covering Ms. Armogida's health insurance premiums "subject to the availability of funds." Dkt. 33-1 at 1. Therefore, this claim is preempted by Section 301. *See Healy*, 804 F.3d at 842 (finding § 301 preemption of a tortious interference claim because the court would have to "review the referral process outlined in Article IV of the CBA and analyze" whether defendants violated that process when they terminated the plaintiff); *Loewen*, 65 F.3d at 1421 (preemption is appropriate

11

when "the resolution of the claim depends on the meaning of . . . a collective bargaining agreement.").

### B. 12(b)(6) Motion

Section 301 preempts Ms. Armogida's ICWS, breach of the Tentative Agreement, and conversion claims so the Court has jurisdiction to consider JWJ's motion to dismiss the amended complaint under Rule 12(b)(6).

#### 1. Federal Claims

Section 301 liability can be imposed only on the parties to a labor contract. *See Teamsters Nat'l Auto Transporters Indust. Negotiating Comm. v. Troha*, 328 F.3d 325, 329 (7th Cir. 2003) ("Since only parties to a contract can violate it, a plaintiff cannot possibly allege that a non–party violated a collective bargaining agreement."). However, a party may be bound by a labor contract by virtue of its status as a "joint employer" with a signatory of the contract. *Sheetmetal Workers Union Local N. 110 v. Public Serv. Co. of Indiana, Inc.*, 771 F.2d 1071, 1075–76 (7th Cir. 1985). "Factors to consider in determining joint employer status are (1) supervision of employees' day-to-day activities; (2) authority to hire or fire employees; (3) promulgation of work rules and conditions of employment; (4) issuance of work assignments; and (5) issuance of operating instructions." *DiMucci Constr. Co. v. NLRB*, 24 F.3d 949, 952 (7th Cir. 1994); *accord Whitaker v. Milwaukee Cnty., Wis.*, 772 F.3d 802, 810 (7th Cir. 2014).[5] These factors are similar to those considered under the National

---

[5] The parties also represent that the joint-employer factors traditionally considered in Title VII suits could be applied here and are not meaningfully different. Dkt. 86 at 12, dkt. 95 at 8. However, the Seventh Circuit has noted it is "awkward" to import the

Labor Relations Board regulatory definition of "joint employer" which provides: "[a]n employer ... may be considered a joint employer of a separate employer's employees only if the two employers share or co-determine the employees' essential terms and conditions of employment." 29 C.F.R. §103.40(a). Meaning that, under the totality of the circumstances, the alleged joint employer has an "actual" role in deciding the hiring, wages, benefits, hours of work, discharge, discipline, supervision, and direction of employees. 29 C.F.R. §103.40(c)(1)-(8).

Here, the Tentative Agreement is between CIJWJ, who is no longer a defendant in this lawsuit, *see* dkt. 57, and CWA, the labor union, *see* dkt. 33-1. While Ms. Armogida alleges that JWJ functioned as her "joint employer" with CIJWJ, dkt. 33 at 2 ¶ 9, this is a legal conclusion that the Court does not accept as true for the purposes of a motion to dismiss. *See Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

Ms. Armogida admits that her complaint does not allege that JWJ had any control "regarding hiring, firing, tools or equipment, supervision, and work schedules." Dkt. 95 at 9. However, she asserts that "those factors are not particularly relevant" because she is "simply claiming that JWJ failed to pay her wages." *Id.* Therefore, she argues the allegation that JWJ had the ability to "control the purse," as evidenced by Ms. Baris's emails and the Grant

---

rule between the labor law and Title VII contexts, *Whitaker*, 772 F.3d at 811, so the Title VII factors are not considered here.

Agreement, sufficiently establishes that "JWJ had some element of control over" CIJWJ. *See* dkt. 33 at 2–3 ¶¶ 15–19.

But the ability to "control the purse" or even having "some element of control" over an employer does not support any of the factors identified as relevant to the joint employer inquiry. *See DiMucci*, 24 F.3d at 952; 29 C.F.R. §103.40(a), (c)(1)-(8). Therefore, because JWJ is not a party to the contract and Ms. Armogida has not pleaded facts supporting a finding that JWJ was a joint employer, her preempted claims against JWJ must be **dismissed**.

### 2. State Law Claims

The remaining state law claims are for breach of the Grant Agreement and promissory estoppel related to Ms. Baris's emails. "When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims." *RWJ Mgmt. Co. v. BP Prods. N. Am.*, 672 F.3d 476, 479 (7th Cir. 2012) (internal quotations omitted); 28 U.S.C. § 1367(c). "The presumption is rebuttable, but it should not be lightly abandoned, as it is based on a legitimate and substantial concern with minimizing federal intrusion into areas of purely state law." *RWJ*, 672 F.3d at 479 (internal quotation marks omitted). The Seventh Circuit has identified three exceptions "that may displace the presumption":

> (1) the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided.

*Id.* at 480.

Here, the factors weigh in favor of remand. First, remanding the case to Marion County Superior Court will avoid any statute of limitations problems. *See Plaats v. City of Lafayette*, 2015 WL 5773724, at *4 (N.D. Ind. Sept. 30, 2015) (noting that any statute of limitations concerns "are less relevant when the court remands a case"), *aff'd sub nom. Plaats v. Barthelemy*, 641 F. App'x 624 (7th Cir. 2016). While this case has been pending in this district for over a year and a half, relatively minimal judicial resources have been expended in supervising these claims. *See RWJ*, 672 F.3d at 481. Moreover, whether JWJ breached the grant agreement or is liable for promissory estoppel are questions that arise out of Ms. Armogida's post-employment interactions with JWJ and are factually and legally distinct enough from the contract-related, preempted claims such that their resolution is not "obvious." *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("If the question whether a state-law claim lacks merit is not obvious, comity concerns may dictate relinquishment of jurisdiction.").

Because none of the three exceptions apply in this case, the Court declines to exercise supplemental jurisdiction over the remaining state law claims. *RWJ*, 672 F.3d at 479. Ms. Armogida's remaining state law claims are **remanded** to Marion County Superior Court.

## IV.
## Conclusion

Defendant's motion to dismiss, dkt. [86], is **GRANTED** as to Ms. Armogida's breach of the Tentative Agreement, IWCS, and conversion claims claims against JWJ. Those claims are dismissed **with prejudice** because Ms. Armogida has already had the opportunity to amend and has not offered any meaningful indication of how she would plead differently if given the opportunity or how that could change the outcome here. *See, e.g., Gonzalez-Koeneke v. West,* 791 F.3d 801, 808 (7th Cir. 2015); Fed. R. Civ. P. 41(b). Ms. Armogida's remaining state-law claims, for breach of the Grant Agreement and Promissory Estoppel, are **REMANDED** to the Marion County Superior Court.

**SO ORDERED.**

Date: 9/26/2022

James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

All Electronically Registered Counsel

Clerk, Marion Superior Court No. 1
City-County Building
200 E. Washington Street, Suite W122
Indianapolis, IN 46204